**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**


**MONTGOMERY JOSEPH ISNER,**
            **Petitioner,**


**v.**                                    **CIVIL ACTION NO.        3:16-CV-139**
                                    **CRIMINAL ACTION NO.   3:15-CR-12**
                                    **(GROH)**



**UNITED STATES OF AMERICA,**
            **Respondent.**


<u>**REPORT AND RECOMMENDATION**</u>

**I.        Introduction**

On October 3, 2016, Montgomery Joseph Isner, the *pro se* Petitioner, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  ECF No. 66[1].  The Government responded on October 24, 2016.  ECF No. 77.  Petitioner filed a reply to the Government's response on November 17, 2016.  ECF No. 83.  On April 3, 2017, Petitioner filed another motion to vacate his conviction and sentence.  ECF No. 85.  On May 26, 2017, Petitioner filed a motion to compel this Court to take action on his case.  ECF No. 88.

The undersigned now issues this Report and Recommendation on Petitioner's §2255 motion without holding an evidentiary hearing.  For the reasons stated below, the undersigned recommends that the District Judge dismiss Petitioner's §2255 motion.

---

[1] Unless otherwise noted, all ECF numbers cited herein are from Petitioner's criminal proceeding in 3:15-CV-12.

## II.  Factual and Procedural Background

**A.     Petitioner's Conviction and Sentence**

**i.      The Indictment.**   On March 17, 2015, Petitioner was charged in indictment 3:15-CR-12 with two felony offenses related to a $60,000 loan which  he obtained from BB&T Bank by pledging as collateral a home located at 1537 Gerrardstown Road, Gerrardstown, Berkeley County, West Virginia.   During the loan application process, Petitioner falsely claimed that he owned the home.   The house actually belonged to his long-term housemate[2] and Petitioner did not have any ownership interest in it.

**ii.     The Plea Agreement.**   On May 22, 2015, Petitioner signed a plea agreement by which he agreed to plead guilty to Count Two of the Indictment, which alleged a violation of Title 18, United States Code, Section 1014.   The plea agreement was filed with the court at the change of plea hearing on June 4, 2015.  ECF No. 33.

Among other terms, paragraphs 5 and 13 of the agreement contained provisions regarding Petitioner's sentence and appellate rights.   In paragraph 5 the parties stipulated that the offense to which Petitioner was entering a guilty plea was a Base Offense Level 7, pursuant to § 2B1.1(a)(1) of the United States Sentencing Commission Guidelines[3] ("the Guidelines").   Id. at 4.   Paragraph 13 contained an acknowledgement that, "Mr. Isner is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal

---

[2]  The record is unclear whether this individual, Miriam Lawson, is a friend, relative or estranged girlfriend of Mr. Isner.  Petitioner claims Ms. Lawson is his sister.  ECF No. 57 at 18:2.  However, the Presentence Investigation Report indicates that Mr. Isner has only one sister, a maternal half-sister named Susie Joe Carter who resides in Steubenville, Ohio.  ECF No. 43 at 33, Paragraph 110. Additionally, an FBI report from an interview with Ms. Lawson reports that Ms. Lawson had known Mr. Isner for approximately 20 years, and that, "Isner lived on an off with Ms. Lawson for that time frame." ECF No. 43 at 13, Paragraph 50.

[3]  The Guidelines are promulgated and issued by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(a).

the sentence imposed." Id. at 6.  However, in paragraph 13, Petitioner agreed that if the Court determined that his "base offense level under the Guidelines is Base Offense Level 7 or less," that he would waive his right, "to appeal any order, the conviction and the sentence or the manner is which that sentence was determined on any ground whatsoever, including those grounds set forth in 18 U.S.C.§ 3742."  Id.  Moreover, Petitioner also agreed to waive his right "to challenge the conviction or the sentence or the manner in which it was determined in any post-conviction proceeding, including any proceeding under Title 28, United States Code, Section 2255."  Id.

**iii.  The Plea Entry.**  On June 4, 2015, the petitioner entered his plea in open court before the undersigned United States Magistrate Judge Robert W. Trumble.  Upon inquiry by the Court, Petitioner advised that he was 47 years old and had attended college[4].  ECF No. 56 at 4:19 – 22.   The plea colloquy then concerned Petitioner's communication with his attorney:

> THE COURT: Mr. Isner, a couple of questions about your representation.  Do you believe you have had adequate time to discuss your case fully with [your counsel] Mr. Compton?
> THE DEFENDANT:  I do.
> THE COURT:   Has he been able to answer your questions about how best to proceed in this case?
> THE DEFENDANT:  He has.
> THE COURT:   Is there anything your lawyer has not done which you have asked him to do?
> THE DEFENDANT:  Not that I can think of.
> THE COURT:  Are you completely satisfied with the legal advice that you have received from Mr. Compton?
> THE DEFENDANT:  Yes.

Id. at 7:10 – 22.  Thereafter, the Court inquired of Mr. Compton whether he knew of any viable defense to the charge contained in Count 2 of the indictment, to which counsel

---

[4]   The Presentence Investigation Report states that the Petitioner has "some college."  ECF No. 43 at 2.  Petitioner reported he attended at least five post-secondary programs earning some college credits but did not obtain a degree.  Id. at 38, paragraph 127.

responded, "[n]o, sir."  Id. at 8:8 – 10.  Later in the colloquy, the Court again inquired of

Petitioner's counsel regarding possible defenses:

> THE COURT:  Mr. Compton, are you satisfied if this case
> went to trial there would be no meritorious legal defense to
> the charge, sir?
> MR. COMPTON:  Yes, Sir.

Id. at 31:24 – 32:2.

The plea colloquy also included a recitation by counsel for the Government of all

the terms of the plea agreement, notably paragraphs 5 and 13.  Id. at 13:19 – 14:7,

16:15 – 17:10.  Following that recitation, the Court inquired of Petitioner:

> THE COURT: All right. Mr. Isner, do you understand what
> this agreement does?
> THE DEFENDANT:  Yes.
> THE COURT:  Do you understand what this agreement
> requires of you?
> THE DEFENDANT:  Yes, I do.
> THE COURT:  Do you have any questions about the plea
> agreement?
> THE DEFENDANT:  No, I don't.
> THE COURT:  I would like you to take a look at the
> original plea agreement for me. First of all, how many
> numbered pages are there?
> THE DEFENDANT:  Seven.
> THE COURT:  And at the bottom of each page, there
> appears to be signatures.  Have you signed the bottom of
> each of the seven pages?
> THE DEFENDANT:  I have.
> . . .
> THE COURT:  Were each of the paragraphs of the plea
> agreement discussed with you prior to reaching an
> agreement with the Government?
> THE DEFENDANT:  They were.

Id. at 19:3 – 20:1.  Following further discussion regarding the non-binding nature of the

plea, the Court then inquired:

> THE COURT:   Does the written plea agreement represent the complete agreement between you and the Government?
> THE DEFENDANT: Yes.
> THE COURT:   Is there anything that you and the Government have agreed to that is not in the plea agreement?
> THE DEFENDANT: No.
> THE COURT:  Sir, do you want me to accept the plea agreement?
> THE DEFENDANT:  Please.

Id. at 21:24 – 22:9.  The Court then found, based on his responses, that Petitioner "understands and agrees with the terms contained in the plea agreement," and ordered the document to be filed as part of the record.  Id. at 22:10 – 14.

The Court next advised Petitioner of the elements of the offense and inquired about Petitioner's understanding of those elements and the Government's burden to prove the same:

> THE COURT:  . . . . Sir, do you understand the statute under which you have been charged?
> THE DEFENDANT: I do.
> THE COURT:  Now if the Government had to go to trial in this case, the Government would have to prove the following elements of Title 18 United States Code Section 1014 against you beyond a reasonable doubt.
> First, that you made a false statement or report on an application, or commitment or loan; Second, you knew that statement was false; and third, that you made the false statement for the purpose of influencing in any way of any bank the deposits of which are insured by the Federal Deposit Insurance Corporation.  Sir, do you understand the elements of the statute under which you have been charged?
> THE DEFENDANT: I do.
> THE COURT:  Considering those definitions, sir, do you consider yourself to be guilty of violating Title 18 United States Code Section 1014?
> THE DEFENDANT: I do.

Id. at 23:21 – 24:15.  Thereafter, counsel for the Government presented the testimony of FBI Special Agent David Rauser who investigated Petitioner's criminal activities to establish the factual basis for the plea.  Id. at 24 – 30.  Following the direct examination of Special Agent Rauser, the Court afforded Petitioner's counsel and Petitioner himself an opportunity to question the witness.  Petitioner did not contest the factual basis of the plea, and conceded the veracity of the Government's recitation:

> THE COURT:  . . . .  Mr. Compton, do you have any questions for this witness?
> MR. COMPTON:  I do not, sir.  Thank you.
> THE COURT:  Mr. Isner, do you have any questions for this witness?
> THE DEFENDANT:  I do not.
> THE COURT:  Is the evidence that the Government attorney just presented substantially correct, Mr. Isner?
> THE DEFENDANT:  Yes.
> THE COURT:  Did the testimony of the Government's witness accurately reflect your involvement in what occurred?
> THE DEFENDANT:  Yes.

Id. at 30:10 – 22.

The Court next asked Petitioner to explain what he did to make him guilty of providing a false statement on a loan application, in violation of 18 U.S.C. § 1014, which led to the following exchange:

> THE DEFENDANT:  I had made a false statement on a loan application claiming that I was an owner of said property at 537 Gerrardstown Road.
> THE COURT:  Okay.  So you falsely stated on a loan application to BB&T, that was the bank that you were dealing with--
> THE DEFENDANT:  Correct.
> THE COURT:  -- that you were the present owner of 1537 Gerrardstown Road, in Gerrardstown West Virginia?
> THE DEFENDANT:  Correct.
> THE COURT:  And in fact you were not the present owner of that property; is that correct?

> THE DEFENDANT:  Correct
> THE COURT:   And did these acts occur on or about March 2, 2009, at or near Jefferson County in the Northern District of West Virginia?
> THE DEFENDANT:  They were.

Id. at 31:3 – 23.

Most relevant to an inquiry regarding possible procedural default based on a waiver of appellate rights, the Court questioned Petitioner at length as to whether he understood the waiver of appellate and post-conviction relief rights.  Id. at 37:15 – 39:25.  Petitioner acknowledged that he understood he was giving up his right to appeal, unless there was a fundamental defect with the plea proceeding, but Petitioner agreed that he was not aware of such a defect, and advised that he was entering his plea voluntarily.  Id. at 37:15 – 38:18.  Petitioner further acknowledged that he understood he was giving up his right to challenge his conviction by collateral attack in a habeas corpus proceeding, and that his only available grounds for such a challenge would be on the basis of ineffective assistance of counsel or prosecutorial misconduct.  Id. at 38:19 – 39:15.  Petitioner then agreed that he did not know of any evidence of ineffective assistance of counsel or prosecutorial misconduct.  Id. at 39:16 – 19.  Finally, Petitioner advised the Court that he had consulted with his counsel about the waiver of his rights and advised that he wished to waive those rights.  Id. at 39:20 - 25.

Petitioner's counsel confirmed to the Court that he believed petitioner understood the waiver of appellate and post-conviction relief rights. Id. at 40:1 – 4.  The Court then reviewed all the Constitutional rights petitioner was giving up by pleading guilty. Id. at 40:13 – 43:11.  The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will.  Id. at

43:15 – 21.  In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement and that he was not entering a plea to protect another person.  Id. at 44:1 – 19.  Petitioner admitted that he was guilty of the crime to which he was pleading guilty Id. at 43:22 – 25.

At the conclusion of the hearing, the Court determined that Petitioner was "fully competent and capable of entering into an informed plea," and that there was a factual basis for Petitioner's plea.  Id. at 45:8 – 11.  The Court then found that Petitioner understood the nature of the charge and the consequences of pleading guilty.  Id. at 45:11 – 13; 40:10 – 12.  The Court further found that Petitioner "understands the constitutional and other legal rights he is giving up because of the plea. . . [and] that Mr. Isner's plea is voluntary."  Id. at 45:13 – 16; 44:1 – 24.  The petitioner did not object to the Court's findings.

**iv.  The Sentencing Hearing and Judgment.**  On October 5, 2015, Petitioner appeared before the Court for sentencing.  The Court had received the Presentence Investigation Report which found the offense to be a Base Offense Level 7, consistent with the agreement of the parties.  ECF No. 43 at 15, Paragraph 61.  An Amended Judgment[5] was entered on October 7, 2015 which dismissed Count 1 and found Petitioner guilty upon his plea to Count 2.  ECF No. 46 at 1. After considering several factors, including the circumstances of both the crime and the defendant, and the sentencing objectives of punishment, the Court sentenced the petitioner to imprisonment for 30 months.  Id. at 2.

---

[5]  The Amended Judgment was entered to correct a clerical mistake, consistent with Fed. R. Crim. P. 36.  ECF No. 46 at 1.

**B.      Appeal**

Following his sentencing hearing, Petitioner's counsel filed an appeal in the Fourth Circuit Court of Appeals, docket number 15-4622, which was denied on March 31, 2016, in an unpublished opinion which affirmed Petitioner's conviction and sentence.  ECF No. 61.  Petitioner's counsel had filed an Anders v. California, 386 U.S. 738 (1967) brief, "raising no meritorious issues, but questioning whether the sentence is substantively reasonable."  Id. at 1.  In its per curium opinion the Court noted that, "Isner did not file a pro se brief despite notice of his right to do so."  Id. at 2.   The Court further found the imposed sentence to be substantively reasonable, and that, "Isner presents no evidence to rebut the presumption of reasonableness applicable to his within-Guidelines sentence."  Id. at 3.

**C.      Habeas Corpus**

On October 3, 2016, Petitioner filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside or correct the sentence by a person in federal custody.  ECF No. 66.  The Government filed its response on October 24, 2016.  ECF No. 77.   Petitioner filed a reply on November 17, 2016.  ECF No. 83.  Thereafter, on April 3, 2017, Petitioner filed a document styled, "Post Conviction – Petition for Relief," which pleading the Clerk docketed as a second motion to vacate conviction and sentence.  ECF No. 85.  On May 26, 2017, Petitioner filed a motion to compel this Court to take action upon his motions filed October 3, 2016 and April 3, 2017.  ECF No. 88.

Petitioner raises four grounds in his habeas corpus petition, each of which the Government argues merits no relief.

**i.        Ground One.**   Petitioner contends that his counsel was ineffective by failing to object to "prosecutorial misconduct" which resulted in "suborned perjury".  ECF No. 66 at 5.  In the related section for supporting facts, Petitioner's explanation borders on unintelligible.   Id.   It appears to argue that the Government's witnesses were untruthful, but does not list the names of specific witnesses who gave false testimony, or the substance of such alleged false testimony[6].

The Government contends that Petitioner procedurally defaulted when he failed to file a supplemental appeal brief.  ECF No. 77 at 18.  The Government argues that because Petitioner has failed to identify any evidence of unreliability of either Government witness Miriam Lawson or loan officer and Government witness Tracey Anders, that his blanket assertion lacks of merit for relief.

**ii.        Ground Two.**   Petitioner contends that his counsel was ineffective by failing to object to prosecutorial misconduct during a debriefing wherein the bank loan officer, Tracey Anders, a Government witness, stated that when Petitioner made false statements on the loan application at the bank, that another person accompanied him. Id. at 6.  Petitioner appears to characterize this information as impeachment evidence which the Government withheld from his counsel.  Id.

In his second motion to vacate or set aside, Petitioner argues that "Constitutionally effective counsel would have dismissed the case at the debriefing hearing," when, according to Petitioner, inconsistent testimony was elicited.  ECF No. 85 at 1.  Petitioner asserts that he was not accompanied by another person at the bank

---

[6] In other portions of his pleadings Petitioner claims that loan officer Tracey Anders and his estranged girlfriend Miriam Lawson gave statements that either conflict with one another or with his own assertion of the facts.  However, Petitioner does not clearly make such an argument in this portion of his motion to vacate.

when he made the false statements in the loan application which led to his indictment, and that his counsel's failure to object based on the discrepancies between his version of events and the version asserted by the Government witnesses resulted in ineffective assistance of counsel.  ECF No. 66 at 6.  Petitioner further asserts that his attorney's ineffective assistance in this regard also prevented him from receiving a favorable departure from the Guidelines.[7]  Id.  Petitioner then asserts that had his attorney been effective in this regard that the Grand Jury would not have returned an indictment against him.  Id.

The Government contends that Petitioner procedurally defaulted when he failed to file a supplemental appeal brief.  ECF No. 77 at 18.  The Government argues that it did not conceal any impeachment material.  Moreover, the Government argues that because there was no trial held in the case, and therefore no Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763 (1972), deadline was reached, it would have been impossible to violate an obligation to disclose impeachment material.  Further, the Government contends that Petitioner's claims regarding his counsel's alleged ineffective assistance of counsel do not meet the two pronged standard established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).

**iii.    Ground Three.**    Petitioner contends that his counsel was ineffective because the same attorney whom he claims was ineffective at the District Court also represented him in his appeal to the Circuit Court.  ECF No. 66 at 8.  Petitioner argues that his lawyer was ineffective because, "I said I wanted to [a]ppeal but he said I couldn't because I took a plea."  Id.  Petitioner asserts that his counsel filed an Anders

---

[7]   Petitioner cites to § 5k1.1 of the Guidelines in support of this contention, however, that provision of the Guidelines refers to assistance provided by the defendant to the Government, whereas, Petitioner's argument is predicated on testimony of a Government witness against him.

brief, which conceded a lack of any meritorious claims, including ineffectiveness of counsel.  Id.

The Government contends that filing an Anders brief was not per se ineffective assistance of counsel, and that the facts herein, especially Petitioner's waiver of appellate rights, made filing an Anders brief appropriate.  Accordingly, the Government argues that because counsel's action did not meet the two pronged Strickland test, Petitioner's claims lack merit.

**iv.     Ground Four.**   Petitioner contends that his counsel was ineffective because he had an insufficient number of meetings and inadequate consultation with his lawyer prior to his plea entry.  Id. at 10.  In his second motion to vacate or set aside, Petitioner argues that if his counsel had "taken the time to get to know me, research would [have] shown that my full scale IQ is 76, reflective of borderline intellectual functioning."  ECF No. 85 at 2.  Petitioner further asserted that such information should have been brought to the attention of the Court at sentencing.  Id.

The Government argues that the record refutes Petitioner's claims regarding his counsel's performance, and further that Petitioner cannot meet the prejudice prong of Strickland.

**v.     Other grounds.**    In his initial motion to vacate or set aside, Petitioner attaches two typewritten sheets which appear to contain additional grounds for ineffective assistance of counsel, including, "[n]eglected necessary investigation and preparation of case," "[n]eglected essential interviewing of witnesses," and "[i]neffective assistance of counsel, before during, and after affair."  ECF No. 66 at 16 – 17.

In his second motion to vacate or set aside, Petitioner also argues several new grounds for relief, including: (1) his counsel was ineffective for not questioning a Government witness during a debriefing; (2) the existence of newly discovered evidence which he claims would exonerate him but which he does not describe further; (3) that his counsel did not exercise due diligence which would have supported Petitioner's claims; and (4) that the sentence imposed was in excess of the maximum authorized by law.  Id. at 2 - 3.

The Government did not file a response to Petitioner's second motion.

## III. STANDARD OF REVIEW

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, "the defendant must show that counsel's performance was deficient."  Id.  Second, "the defendant must show that the deficient performance prejudiced the defense."  Id. These two components are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Strickland, 466 U.S. at 687.  However, a reviewing court does not "grade" trial counsel's performance, and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002).  Essentially,

the reviewing court must not "second-guess" counsel's performance and must evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002) (quoting Strickland, supra).   Furthermore, the standard of reasonableness is objective, not subjective.  See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed.  See id. at 691.  In the context of a guilty plea, a petitioner must demonstrate that there is a reasonable probability that but for his attorney's alleged mistakes, he would not have pled guilty and instead would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong."  Fields, 956 F.2d at 1297, citing Strickland, 466 U.S. at 697.

The Fourth Circuit has set forth two categories of decisions made by trial counsel when analyzing ineffective assistance of counsel claims.  First, there are "personal" decisions that require the defendant's consent, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial.  Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998)(citations omitted).  The second category of decisions do not require the defendant's consent and include decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.'"  Id. (quoting United States

v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)).   Accordingly, "[t]here is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'"   Harrington v. Richter, 562 U.S. 86, 109, 131 S.Ct. 770, 790 (2011) (citing Yarborough v. Gentry, 540 U.S. 1, 8 (2003)).

Further, in evaluating a post-guilty plea of ineffective assistance of counsel, statements made under oath affirming satisfaction with counsel are binding, absent clear and convincing evidence to the contrary.  See Blackledge v. Allison, 431 U.S. 63, 74-75 (1977).

## IV.  ANALYSIS

Petitioner does not meet the performance prong of the Strickland test for any ground raised in his claim of ineffective assistance of counsel.  Pursuant to the holdings in Strickland and Fields, supra, where Petitioner does not meet the performance prong, this Court need not examine the prejudice prong.

### A.    Ground One.

Petitioner alleges that his counsel was ineffective because he failed to object to the alleged prosecutorial misconduct of suborning perjury[8].  However, Petitioner fails to provide proof to support his claim which is not clearly articulated, but which appears to argue that the Government's witnesses were untruthful at their debriefing, and that accordingly, any legal action taken by the Government which was predicated upon such statements amounted to prosecutorial misconduct.   However, Petitioner does not

---

[8] "Whoever procures another to commit any perjury is guilty of subornation of perjury."  28 U.S.C. § 1622.

identify a specific portion of the statements of either Miriam Lawson or Tracey Anders which he believes to be either untruthful, unreliable or the basis of some later act of perjury, and to which his counsel should have objected.  Petitioner appears to assert that the statements of the Government's witnesses conflict in some regard, and thus prosecutorial misconduct resulted as a result of those unspecified but allegedly conflicting statements made at a debriefing.

If viewed as a claim that the Government's counsel attempted to suborn perjury, it is first necessary to determine whether such a witness statement would meet the definition of perjury.  Perjury is defined by and made a criminal act by 28 U.S.C. § 1621, which provides that:

> Whoever--
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
> is guilty of perjury. . . .

Pursuant to the statute, a perjured statement must be a statement made after having taken an oath before a competent tribunal, officer, or person to be truthful in any statement.  The record is unclear regarding whether Ms. Lawson or Ms. Anders took oaths of truthfulness before their debriefing statements.  But, regardless of whether they took such an oath, Petitioner does not cite to a single specific instance of untruthfulness by either witness at their debriefings.

Debriefings are informational sessions which are not subject to the Federal Rules of Civil or Criminal Procedure. Debriefings are not presided over by judicial officers or judges. In this regard, a debriefing is similar to, but less formal than, a deposition, which, by contrast, is subject to the Federal Rules of Civil and Criminal Procedure. Pursuant to Federal Rule of Criminal Procedure 15(e), "a deposition must be taken and filed in the same manner as a deposition in a civil action." Pursuant to Federal Rule of Civil Procedure 28(a)(1), depositions are taken before either, "an officer authorized to administer oaths," or "a person appointed by the court." Federal Rule of Civil Procedure 30(c)(2) governs the procedure for objection at a deposition, which "must be noted on the record, but the examination still proceeds."

In Petitioner's case, prior to the return of an indictment on March 17, 2015, no court had jurisdiction of the matter. ECF No. 1. Thus, at the time of the debriefing about which Petitioner complains, his case was not pending before a court which could have ruled on any objections counsel might have made at debriefing. Further, a debriefing session is widely viewed as a discovery vehicle for a criminal defendant, and as such is viewed as helpful to defense counsel to fully understand the evidence which might be presented at trial. Accordingly, Petitioner cannot demonstrate that his counsel's failure to object to statements made at a debriefing was an error so serious that he was without counsel within the meaning of the Sixth Amendment.

Further, Petitioner does not satisfy the performance prong of Strickland. Petitioner fails to provide any instance of false testimony which resulted after his counsel's failure to object at debriefing, and fails to describe any error so serious that his lawyer was not providing him the counsel guaranteed by the Sixth Amendment. The

only testimony heard by the Court was at the plea entry hearing and consisted of testimony by Petitioner himself and the Government's investigator, Special Agent Rauser, who provided the factual basis for the plea.   Following such testimony, Petitioner concurred that Special Agent Rauser's testimony was substantially correct and accurately reflected Petitioner's involvement in what occurred.   ECF No. 56 at 30:16 – 22.  No example of false testimony is presented.

Petitioner claims that it was his counsel's failure to object to the alleged suborning of perjury by the Government which constituted ineffective assistance of counsel.   However, in addition to being unable to support his assertions with facts, Petitioner does not explain how his counsel's performance was ineffective in that regard.   It is not unusual for two witnesses to have differing recollections of events about which they testify.  Such discrepancies are left to the trier of fact to resolve based on the credibility of those witnesses.   Petitioner's case was resolved before any witnesses testified before a trier of fact.   Nonetheless, Petitioner does not direct the Court to any examples of specific instances of even inconsistent statements of the Government's witnesses, or how his counsel's actions in response to such statements was ineffective.   Additionally, Petitioner does not explain to the Court to why his counsel's failure to object to such testimony was ineffective.   Applying the strong presumption that counsel provided reasonable professional assistance, the undersigned finds that Petitioner cannot meet the performance prong of Strickland.  Accordingly, this Court need not consider the prejudice prong, and finds that petitioner's argument in Ground One is without merit.

**B.      Ground Two.**

Petitioner alleges that his counsel was ineffective because counsel failed to object to a witness's allegedly untruthful statements made during a debriefing, and that such statements led to three undesirable outcomes: (1) the case was not dismissed at the debriefing stage; (2) the grand jury subsequently returned an indictment; and (3) there was not a favorable departure from the Guidelines at sentencing.  Viewing these assertions under the Strickland analysis, Petitioner's argument fails as to all three outcomes.

As in Ground One above, here Petitioner argues that his counsel was ineffective when he did not object at the debriefing, and that had his counsel objected at that time, the matter would have been dismissed at the debriefing stage.  As noted in section IV.A. above, prior to the return of an indictment against Petitioner, no court had jurisdiction of the matter, and thus, there was no judicial officer to whom counsel could have raised any objections made at the debriefing.  Petitioner's assertion that had his counsel been effective, the case against him would have been "dismissed" at the debriefing stage suggests a legal impossibility.  At the debriefing stage an investigation exists; a case does not exist until it is charged before the court.  Thus, it would have been impossible to "dismiss" a case which had not yet been filed. Petitioner cannot demonstrate that his counsel failed to meet the performance prong when counsel did not object to a statement made at a debriefing.  Accordingly, this Court need not consider the prejudice prong, and finds that petitioner's argument is without merit.

Second, Petitioner claims that but for his counsel's failure to object to witness statements made at the debriefing, he would not have been indicted.  Petitioner does

meet his burden to explain how his counsel's failure to object at the debriefing led to his indictment.   Again, Petitioner does not demonstrate that his counsel made errors so serious as to violate his Sixth Amendment right to counsel.   Counsel's performance at the debriefing is presumed to fall within the wide range of reasonable professional assistance.   Accordingly, Petitioner cannot meet the performance prong of the Strickland standard necessary to show he received ineffective assistance of counsel, and thus the Court need not consider the prejudice prong.

Third, Petitioner alleges that his counsel's failure to object to the Government's witnesses' testimony at the debriefing constituted ineffective assistance of counsel in that it negatively impacted him at sentencing.   However, at Petitioner's sentencing hearing the Court listed those factors which it considered before imposing a 30 month sentence:

> In reaching my decision as to the proper sentence to be imposed, I did consider all those factors set forth in 18 USC Section 3553(a). Specifically defendant's involvement in this instant offense was very serious in nature, and demonstrates his consistent pattern of violating the law. His history of using variations of names and Social Security numbers is also concerning because it indicates to the Court an attempt to evade authority or law enforcement. Defendant has an extensive criminal history which began in 1987 at the age of 18. He has accumulated 11 convictions for a cornucopia of offenses, including DUI, multiple convictions for driving suspended, and convictions involving forgery, a concealed weapon, assault, and hiding a fugitive. His most recent conviction was in 2014. He was a multistate and prior federal offender. The instant offense occurred in fact while he was on federal supervised release.

ECF No. 57 at 24:14 – 25:5.  The Court did not list the nature of the evidence against Petitioner or any information obtained in the debriefing about which Petitioner complains.   Instead, the Court listed the personal aggravating factors which Petitioner

himself presented.  Most notable was Petitioner's criminal history, including his attempts to evade law enforcement and that he was on federal supervised release when he committed the instant offense, as the factors which were relevant to the imposition of sentence.  In this third assertion of error under Ground Two, Petitioner is again unable to meet the performance prong of the Strickland analysis.  He cannot demonstrate that his counsel's failure to object to statements made at the debriefing was so serious that it led to an increased sentence and thereby resulted in a failure to function as counsel guaranteed by the Sixth Amendment.  Accordingly, this Court need not consider the prejudice prong, and finds that petitioner's argument is without merit.

**C.      Ground Three.**

Petitioner alleges that his counsel was ineffective based on counsel's unsuccessful appeal of his conviction and sentence which appeal consisted primarily of the filing of an Anders brief, after Petitioner expressly waived his right to appeal or collaterally attack his conviction in paragraph 13 of his plea agreement.  ECF No. 33 at 6.  Such a waiver of appellate rights is widely recognized as permissible, and even desirable to ensure finality of pleas.

**i.      Petitioner validly waived his appellate rights.**  In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994) quoting United States v. Wessells, 936 F.2d 165, 167 (4th Cir. 1991), the Fourth Circuit held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'"  The Fourth Circuit further wrote that whether a waiver is knowing and intelligent, "depends upon the particular facts and circumstances surrounding [its making], including the background,

experience, and conduct of the accused." Id. quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992).

However, the Fourth Circuit found that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review on certain limited grounds. Id. at 732.  For example, the Court recognized that a defendant, "could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. quoting U.S. v. Marin, 961 F.2d 493 (4th Cir. 1992).  Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations." Id.  Accordingly, ineffective assistance of counsel claims related to proceedings after plea entry are barred by a valid waiver of appellate rights unless those proceedings were conducted in violation of a claimant's Constitutional rights.

The Fourth Circuit has also found there is, "no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." United States v. Lemaster, 403 F.3d 616, n. 2 (2012).  Therefore, a waiver of the right to collaterally attack a sentence is valid as long as the waiver is knowing and voluntary. Id.  When reviewing an ineffective assistance of counsel claim in a case where there is a waiver of

collateral-attack rights in a plea agreement, a court must first determine whether there is valid waiver which:

> [D]epends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy—specifically, whether the district court questioned the defendant about the appeal waiver—the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).[9]  Thus, if a reviewing court finds that the waiver of rights was valid, any collateral attack including an ineffective assistance of counsel claim related to the plea agreement, is barred by the waiver, provided that a plaintiff may still pursue a collateral attack or appeal related to imposition of an illegal sentence or plea proceedings conducted in violation of the Constitution.

Examination of the totality of the circumstances in Petitioner's case, as mandated by Blick, includes consideration of the waiver provision in Petitioner's plea agreement, the plea agreement as a whole, the plea colloquy and Petitioner's ability to understand those proceedings.   Upon review, the undersigned finds that Petitioner validly waived his right to appeal.  At the time of his plea and sentencing, Petitioner was 47 years old, had attended college, could read and write the English language and had prior

---

[9] The unpublished decision  United States v. Morris, No. 07-4223, slip op. (4th Cir. Sept. 13, 2007) suggests that when a court conducted a thorough Rule 11 colloquy and the defendant specifically mentioned he waived the right to appeal any sentence below the statutory maximum, the record thereby established that defendant made a knowing and voluntary waiver of rights.

experience as a criminal defendant.[10]     ECF Nos. 56 at 4:19 – 25, 43 at 16 – 30.

Petitioner was represented by counsel who negotiated terms which dismissed Count 1,

and thereby halved[11] Petitioner's potential incarceration and fines.  Petitioner signed a

written plea agreement which clearly stated in paragraph 13 that he waived his right to

appeal that plea agreement, or any pre-trial or post-conviction rulings of the court

related thereto.  ECF No. 33 at 6.

During the plea colloquy, upon questioning from the Court, Petitioner indicated

that he understood what his plea agreement did, and that he had no questions about his

plea agreement. ECF No. 56 at 19:3 – 11.  Further, Petitioner acknowledged that he

signed each of the seven pages of the written agreement, and that he had discussed

each paragraph with his counsel prior to signing the agreement.  Id. at 19:12 – 20:1.

Petitioner then agreed that the written plea agreement represented the entirety of his

agreement with the Government.   Id. at 21:24 – 22:6.   Following Petitioner's

acknowledgement of understanding of his Constitutional rights including the right to

appeal, and that he wished to proceed with the plea and waive his rights, Petitioner's

counsel advised the court that he was satisfied that if the case proceeded to trial, he

was unaware of any meritorious legal defenses available to his client.  Id. at 31:24 –

---

[10]     As noted by the Court at sentencing, the Presentence Investigation Report reflects that Petitioner was first convicted of a felony offense at age 18 in 1987.  At the time the instant bank fraud was committed, Petitioner was on probation in the Northern District of West Virginia, 3:06-CR-34, for interference with a flight crew and assault; Petitioner was convicted of those offenses in the District of Colorado, 05-CR-171-EWN, on June 17, 2015.  Petitioner was also repeatedly convicted of various driving offenses in a number of State jurisdictions, notably multiple DUI and driving revoked for DUI offenses, including: at age 18 in 1987; at age 19 in 1987; at age 20 in 1988; at age 21 in 1989; at age 22 in 1990; three times at age 24 in 1992; at age 25 in 1994; at age 29 in 1997; at age 32 in 2000; at age 35 in 2003; at age 41 in 2009; and at age 43 in 2011.

[11]   Petitioner was charged in Count 1 with a violation of 18 U.S.C. § 1344, and in Count 2 with a violation of 18 U.S.C. § 1014.  The potential penalty for each violation was a fine of not more than $1,000,000, or imprisonment for not more than 30 years, or both.

32:2.  The Court then conducted a lengthy colloquy to ensure that Petitioner understood the consequences of waiving his right to appeal his conviction.  Id. at  37:15 – 39:25.

At sentencing, the District Court further advised Petitioner about the consequences of waiving his appellate rights, and what rights he retained despite his waiver:

> Mr. Isner, although a defendant who has pled guilty has the right to appeal from the judgment of the Court, a defendant who has pled guilty may waive that right as part of a plea agreement. You entered into a plea agreement which waived, either in whole or in part, your right to appeal your sentence. Those types of waivers are generally enforceable, and it appears as though it is enforceable in your case. However, if you believe the waiver in your plea agreement is unenforceable for some reason, or you think your guilty plea was somehow unlawful or involuntary, or you believe there's some other defect in these proceedings you didn't waive by your plea of guilty, then you can present that theory to the appellate court. However, if you decide to appeal, you must file a notice of appeal with the clerk of this Court within 14 days following entry of the judgment and commitment order.

ECF No. 57 at 27:2 – 18.

In consideration of the totality of the circumstances presented, the undersigned finds that Petitioner knowingly, intelligently and validly waived his appellate rights, including his right to challenge his conviction in a collateral attack such as the instant petition filed under 28 U.S.C. § 2255.

**ii. Petitioner's sentence was Constitutionally imposed.** Even with his valid waiver of appellate rights, Petitioner is permitted to appeal the imposition of an illegal sentence or any plea conducted in violation of the Constitution.  Petitioner fails to make either of these arguments, but instead argues that his rights were violated because his counsel filed an Anders brief which did not raise "any meritorious claim."

ECF No. 66 at 8.   In the Anders brief which he filed on Petitioner's behalf, counsel properly raised the issue of the appropriateness of the imposed sentence, specifically whether the sentence is substantively reasonable to accomplish the goals of 18 U.S.C. § 3553(a), which was one of the few appellate issues Petitioner did not waive his right to contest.   As Petitioner acknowledged in his initial motion to vacate, "I said I wanted to [a]ppeal but he said I couldn't because I took a plea."   ECF No. 66 at 8.

The Fourth Circuit has recognized that in reviewing claims of ineffective assistance of counsel on appeal, "reviewing courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'" Bell v. Jarvis, 236 F.3d 149 (2000) quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir.1993).   Consistent with paragraph 13 of the plea agreement, Petitioner's counsel filed a limited petition for appeal following sentencing, which only addressed a permissibly reserved issue, that being the legality of his sentence.   Following the directive of Bell v. Jarvis, this Court in reviewing that action must accord counsel the presumption that he properly determined that there were no other appropriate issues to appeal based on Petitioner's express waiver of his appellate rights, as well as that Petitioner's sentence was within statutory limits and not based on impermissible factors.

Petitioner's counsel filed a brief which questioned whether the sentence imposed was "greater than necessary to accomplish the goals of 18 U.S.C.§ 3553(a)."   ECF No. 61 at 2.   In its decision denying that appeal, the Fourth Circuit noted that, "Isner did not file a pro se brief despite notice of his right to do so."   That recognition forms part of the Government's assertion that Petitioner procedurally defaulted on this ground for relief. Regardless of whether Petitioner is viewed as having procedurally defaulted, he has

made no showing that his counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment.   The Anders appeal brief which counsel filed was consistent with Petitioner's waiver of his right to appeal as a term of the plea.

Consistent with Bell, supra, counsel is presumed to have decided which issues were most likely to afford relief on appeal, including his filing of an Anders brief. Petitioner cannot demonstrate that his counsel failed to comport with the performance prong of Strickland, thus this Court need not consider the prejudice prong.   Accordingly, Petitioner's allegation of ineffective assistance of counsel raised in Ground Three is without merit.

**D.     Ground Four.**

Petitioner alleges his counsel was ineffective because he did not have sufficient opportunity to consult or communicate with his lawyer.   Petitioner also claims that had his counsel met more fully with him, he would have asserted that Petitioner's mental capabilities were "borderline intellectual functioning."  ECF No. 85 at 2.  The latter claim seems inconsistent on its face with Petitioner's assertion during his plea entry that he was college educated.  ECF No. 56 at 4:21 – 22.  Although in support of this contention Petitioner attaches a single page, numbered 10 of 15, of what purports to be a psychological evaluation, the page is undated, unsigned, and the ultimate findings are not included.  ECF No. 85-2 at 1.  However, if authentic, the page reflects that Petitioner was subject to (WAIS-IV) intelligence testing conducted by Michael B. Kaiser, Ph.D., on March 30, 2015, less than two weeks after Petitioner's indictment.

Strickland instructs that reviewing courts, "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S. Ct. at 2066. If the psychological evaluation excerpt that Petitioner submits in support of his motion is authentic, it suggests that the report was generated in response to the instant criminal charges in order to assist Petitioner's counsel. That counsel did not submit the report to the Court may reflect that the findings were not beneficial to Petitioner. Applying the presumption of adequate assistance mandated by Strickland, this Court finds that counsel's decision not to submit such a report did not constitute an error so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment. Accordingly, Petitioner cannot meet the performance prong of the Strickland test.

Petitioner's claims of insufficient communication or consultation with his lawyer are also inconsistent with his representations to the Court at plea entry. When asked, "Do you believe you have had adequate time to discuss your case fully with Mr. Compton?" Petitioner answered, "I do." ECF No. 56 at 7:10 – 13. Petitioner then stated that he could not think of anything he asked his lawyer to do which was not performed. Id. at 7:17 – 19. Critically, Petitioner stated that he was completely satisfied with the legal advice he received from his lawyer. Id. at 7:20 – 22.

The performance prong of the Strickland analysis is intended to determine whether counsel made serious errors which denied him his Sixth Amendment right to counsel. Petitioner was indicted on March 17, 2015. ECF No. 1. Mr. Compton was appointed to represent Petitioner on April 15, 2015. ECF No. 13. At a detention

hearing held on April 20, 2015, where Mr. Compton represented Petitioner, the Government's motion to detain Petitioner was denied.  ECF No. 17.  At the request of Petitioner's counsel, but without waiving speedy trial rights, trial in the case was continued 20 days to June 15, 2015, to provide counsel additional time to prepare.  ECF No. 24.  Thereafter, on June 4, 2015, Petitioner entered his change of plea.  ECF Nos. 33, 34.

Petitioner repeatedly raises his counsel's action and inaction at a debriefing to support his contention that counsel was ineffective in his representation.  However, Petitioner's claims that he had insufficient opportunity to consult with his counsel are inconsistent with the record which demonstrates counsel appeared several times and successfully advanced Petitioner's position against detention both before and after conviction.  Those claims are also inconsistent with Petitioner's own on-the-record admissions that he spoke with his lawyer about all of the terms of his plea agreement before entering that plea.  Again, Petitioner is unable to meet the performance prong of the Strickland test.  He presents no convincing claim that his counsel erred when he raised one of the few issues on appeal which had not previously been waived.  Moreover, the record demonstrates that at his plea entry, Petitioner agreed that he had sufficient opportunity to consult with his attorney before plea entry.  Because Petitioner is unable to meet the performance prong of the Strickland analysis, this Court need not consider the prejudice prong, and finds that Ground Four is without merit.

**E.     Other Grounds.**

In his first and second motions to vacate Petitioner makes additional assertions of ineffective assistance of counsel without fully supporting those claims.  Although *pro*

*se* petitions are to be liberally construed, consistent with <u>Haines v. Kerner</u>, 404 U.S.519 (1972), habeas petitions must meet heightened pleading requirements. <u>McFarland v. Scott</u>, 512 U.S. 849, 856 (1994). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." <u>Blackledge v. Allison</u>, 431 U.S. 63, 75, n.7 (1977)(internal citations omitted). Unsupported, conclusory allegations do not entitle a habeas petitioner to relief. <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992), cert. denied, 507 U.S. 923 (1993).

      **i.**    **Additional Grounds in First Motion to Vacate.** Petitioner's claims of ineffective assistance of counsel alleged in his first motion to vacate are unsupported and do not entitle him to relief. Petitioner alleges that his counsel "[n]eglected necessary investigation and preparation of case," and "[n]eglected essential interviewing of witnesses," but includes accompanying facts which relate to his sentencing hearing and his desire to have a downward departure from the Guidelines. ECF No. 66 at 16. That the facts which purport to support those claims about lack of investigation and interviewing, are unconnected to the claims themselves is both perplexing and unconvincing in relation to Petitioner's request for relief. Moreover, such claims are internally inconsistent with his contention that his counsel failed to interview witnesses when counsel was present at the debriefing of the Government's two key witnesses. Counsel's presence during the debriefing of those witnesses tends to demonstrate that counsel did investigate and prepare the case, rather than the opposite. Petitioner does not demonstrate that his counsel's performance in this regard included any serious errors which denied him his Sixth Amendment right to counsel.

Likewise, Petitioner's additional claim that his counsel was ineffective "before during, and after affair," is followed by several claims related to the alleged violation of his rights and his feelings about the court proceedings, and nearly a full page of Petitioner's assertions regarding the events related to his conviction, including Petitioner questioning the veracity of witnesses' debriefing statements. There is not a listing of facts related to his counsel's performance. ECF No. 66 at 16 – 17. Again, Petitioner does not meet his burden to show his counsel committed any serious errors which denied Petitioner his Sixth Amendment right to counsel.

Petitioner's initial motion does not state facts that point to the real possibility of Constitutional error for any of these three additional claims, thus his claims therein are unpersuasive. Although Petitioner claims his counsel was ineffective, he does not describe how his counsel's actions constituted error, or fell outside the wide range of reasonable professional assistance. Moreover, all three of these claims appear to be modified versions of the same arguments addressed in Grounds One through Four.

**ii.      Additional Grounds in Second Motion to Vacate.** In his second motion to vacate or set aside, Petitioner argues several new grounds for relief, including that his counsel was ineffective for: (1) not questioning a Government witness during a debriefing; (2) failing to "investigate and interview promising witnesses" who are not further identified; (3) failing to obtain information about Petitioner such as "re-discovered evidence" of his intellectual functioning; and (4) failing to introduce mitigating evidence of his intellectual functioning and psychological diagnoses at sentencing. ECF No. 85 at 1 – 2. Petitioner also baldly claims that newly discovered evidence would exonerate him and that the exercise of due diligence could have discovered facts supporting his

claims, but does not describe or identify this exculpatory evidence.  Id. at 3.  Petitioner then argues that such unspecified evidence caused his sentence to be imposed in excess of the maximum authorized by law.   Id.

The Supreme Court has long recognized that "bald legal conclusions with no supporting factual allegations" are grounds for dismissal of a habeas corpus petition filed pursuant to 28 U.S.C. § 2255.  Sanders v. United States, 373 U.S. 1, 19, 83 S. Ct. 1068, 1079 (1963).  Even liberally construing Petitioner's *pro se* pleadings, Petitioner presents no facts to support his claims.   Without supporting facts Petitioner's bald claims do not point to a real possibility of constitutional error.  Petitioner's recitations of legal phrases and terminology[12] applicable in collateral attack proceedings are insufficient to support the issuance of a writ of habeas corpus.  Consistent with Sanders, such conclusions without supporting factual allegations are grounds for dismissal on these alleged grounds.


## V.  Recommendation

For the reasons set forth in this opinion, it is recommended that the Petitioner's motions to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. § 2255 [ECF Nos. 66, 85] be **DENIED with Prejudice**. It is further recommended that the Petitioner's Motion to Compel [ECF No. 88] be **DENIED as Moot**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying

---

[12]   Among other claims, Petitioner writes that, [n]ewly discovered evidence that if proven and viewed in light of the evidence as a whole would be sufficient by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense,"  but fails provide any details regarding the alleged newly discovered evidence.  Petitioner also writes that, "[t]he fact[s] supporting the claim or claims presented could have been discovered through the exercise of due diligence," but fails to cite to any supporting facts.  ECF No. 85 at 3.

those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED:  June 15, 2017

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE